UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAMAR MASON | : | CASE NO.: |
| Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| HQ PACK OF CONNECTICUT, INC. | : | |
| Defendant | : | NOVEMBER 9, 2018 |

## COMPLAINT

### I. INTRODUCTION

1.  This is an action for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, 42 U.S.C. Section 1981 and Connecticut General Statutes Sections 46a-60(a)(1) and 46a-60(a)(4).

### II. PARTIES

2.  Plaintiff, Shamar Mason ("Mason") is an individual residing in Stratford, Connecticut. Mason's race is African-American and his color is Black.

3.  Defendant, HQ Pack of Connecticut, Inc. ("HQP") is a corporation organized under the laws of the State of Connecticut, with a principal place of business at 7 Francis J. Clarke Circle, Suite 5, Bethel, Connecticut.

### III. JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over Mason's federal law claims pursuant to 28 U.S.C. Section 1331 because they assert a federal question under 42 U.S.C. Section 1981.

5. This Court also has subject matter jurisdiction over Mason's state law claims pursuant to 28 U.S.C. Section 1367 because the claims are so related to his federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in the District, as actions giving rise to this lawsuit occurred within this District.

## IV. ADMINISTRATIVE REQUIREMENTS

7. On or about April 13, 2018, Mason filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC").

8. On or about September 19, 2018, Mason received a release of jurisdiction from the CHRO pursuant to Connecticut General Statutes Section 46a-101.

9. On or about October 18, 2018, Mason received a Right to Sue letter from the EEOC.

## V. FACTS

10. Mason was employed by HQP as a Carpenter from approximately November 2017 through March 26, 2018.

11. Mason initially was placed with HQP through Viking Resource Group, and then was hired on as a full-time employee of HQP in approximately November 2017.

12. Throughout the course of his employment, Mason was subjected to harassment and discrimination from his supervisor, Zach Durant ("Durant"), and his Director, Ryan Healy ("Healy").

13. Mason was one of only two African-Americans on the crew, along with Lloyd Pridgen ("Pridgen").

14. Both Pridgen and Mason were subjected to harassment and discrimination.

15. Healy and Durant would frequently make racially tinged jokes, such as talking about Mason and Pridgen eating watermelon and drinking Kool-Aid.

16. On another occasion, Healy came up to Mason and Pridgen and said "What's up, my niggas?"

17. On another occasion, Durant wrote "Shamar is gay" on Mason's notebook.

18. On at least two occasions, Durant threw Mason's lunch into the garbage.

19. On another occasion, Mason complained to HQP's management about a service technician, who was there to work on the forklifts, who yelled out about Mason "get that Ape off the lift so I can work." Nothing was done by HQP as a result of Mason's complaint.

20. On another occasion, Durant poured water into Pridgen's boots. Although Pridgen complained to Healy, nothing was done.

21. On Thursday, March 22, 2018, someone wrote the word "nigger" on Pridgen's toothbrush.

22. Later that day, Mason's lunch was again thrown into the garbage.

23. Mason went to Healy and complained about the word "nigger" being written on Pridgen's toothbrush and his lunch being thrown in the garbage.

24. Healy's response was to tell Mason and Pridgen to go home for the rest of the day while he tried to "get to the bottom of it."

25. At about 3:00 that afternoon, Mason received a call from Healy telling him not to come to work the following day, and to come in on Monday, March 26, 2018.

26. When Mason reported to work on March 26, 2018, Healy terminated Mason, allegedly because he had left work early on March 14, 2018 because of a snowstorm.

27. While Mason did leave early on March 14, 2018, he had permission from Durant to do so.

28. In addition, a white co-worker, Steve (last name unknown), regularly walked out of work early without being written up or even talked to.

## VI. COUNT ONE – DISCRIMINATION IN VIOLATION OF TITLE VII

29. Based on the foregoing, HQP discriminated against Mason based on his race and/or color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*.

30. HQP discriminated against Mason intentionally, with malice, and/or with reckless indifference to Mason's federally protected rights.

31. HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

4

**VII.    COUNT TWO – RETALIATION IN VIOLATION OF TITLE VII**

32. Based on the foregoing, HQP retaliated against Mason for having complained about discrimination based on his race and/or color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq*.

33. HQP retaliated against Mason intentionally, with malice, and/or with reckless indifference to Mason's federally protected rights.

34. HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

**VIII.   COUNT THREE – DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981**

35. Based on the foregoing, HQP discriminated against Mason based on his race and/or color, and thus impaired Mason's ability to enjoy all the benefits, privileges, terms, and conditions of the contractual relationship between Mason and HQP, in violation of 42 U.S.C. Section 1981.

36. HQP discriminated against Mason intentionally, with malice, and/or with reckless indifference to Mason's federally protected rights.

37. HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

**IX.    COUNT FOUR – RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 1981**

38. Based on the foregoing, HQP retaliated against Mason for having complained about discrimination based on his race and/or color, and thus impaired

Mason's ability to enjoy all the benefits, privileges, terms, and conditions of the contractual relationship between Mason and HQP, in violation of 42 U.S.C. Section 1981.

39. HQP retaliated against Mason intentionally, with malice, and/or with reckless indifference to Mason's federally protected rights.

40. HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

## X.  COUNT FIVE – DISCRIMINATION IN VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 46a-60(a)(1)

41. Based on the foregoing, HQP discriminated against Mason based on his race and/or color in violation of Connecticut General Statutes Section 46a-60(a)(1).

42. HQP discriminated against Mason intentionally, willfully, wantonly, and/or with reckless indifference to Mason's rights.

43. HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

## XI.  COUNT SIX – RETALIATION IN VIOLATION OF CONNECTICUT GENERAL STATUTES SECTION 46a-60(a)(4)

44. Based on the foregoing, HQP retaliated against Mason for having complained about discrimination based on his race and/or color, in violation of Connecticut General Statutes Section 46a-60(a)(4).

45. HQP retaliated against Mason intentionally, willfully, wantonly, and/or with reckless indifference to Mason's rights.

46.  HQP's actions have caused Mason to suffer damages, including, but not limited to, lost compensation, wages and benefits, emotional and physical distress, as well as loss of enjoyment of life.

## XII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests:

a. Money damages, including compensatory damages;

b. Damages for emotional distress, loss of self-esteem and consequential damages;

c. Punitive damages;

d. Statutory Attorneys' Fees;

e. Costs;

f. Interest; and

g. Such other and further relief as the Court deems just and equitable.

Plaintiff demands a trial by jury.

PLAINTIFF, SHAMAR MASON

*<u>Anthony J. Pantuso, III</u>*
Anthony J. Pantuso, III
Fed. Bar No. ct11638
Law Offices of Anthony J. Pantuso, III
4 Research Drive, Suite 402
Shelton, CT 06484
203-726-0284
apantuso@pantusolawfirm.com